**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Mike Kazerouni, Esq. (SBN: 252835)
mike@kazlg.com
Pamela Prescott, Esq. (SBN: 328243)
pamela@kazlg.com
245 Fischer Ave., Unit D1
Costa Mesa, California 92626
Telephone: (800)400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**Robert L. Hyde, Individually and on Behalf of All Others Similarly Situated,**

                    Plaintiffs,

         v.

**Tesla, Inc.,**

                    Defendant.

Case No.: **'26 CV 0942 BJC  MMP**

**CLASS ACTION SEEKING STATEWIDE RELIEF**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**

1) **CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE §§ 1750, *et seq.*;**
2) **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. PROF. CODE §§ 17200, *et seq.*;**
3) **THE SONG-BEVERLY CONSUMER WARRANTY ACT ("SBCWA"), CAL. CIV. CODE §§ 1790, *et seq.*;**
4) **FRAUDULENT CONCEALMENT; AND,**
5) **UNJUST ENRICHMENT.**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.    This action concerns a material safety defect in tens of thousands of Tesla Model S vehicles manufactured by defendant Tesla, Inc. ("Tesla" or "Defendant") from the 2023 model year to the present (the "Class Vehicles"), all which contain issues that are twofold. The vehicle was designed with electrically actuated, flush-mounted *exterior* door handles that require electronic extension and latch actuation in order to permit opening from the outside. Further, the *interior* door handles also require electronic extension and latch actuation in order to permit opening from the interior. Tesla's design renders the vehicle not reasonably escapable and not reasonably rescuable following foreseeable collisions involving loss of low-voltage power, fire, or emergency system shutdown (the "Defects"), especially for driver's and passengers attempting to exit from the rear of the vehicle

2.    Upon information and belief, Defendant has long known about these Defects and/or at a minimum the inherent risks associated with utilizing their design.

3.    This presents a significant safety risk to consumers and the general public, especially to passengers in the rear of the vehicle, following easily foreseeable collisions involving loss of low-voltage power, fire, or emergency system shutdown, particularly for occupants in the rear seats of the vehicle if they are unable or are not on notice that they must pull a hidden manual cable beneath the carpeting underneath the rear seats in order to open the rear doors.

4.    Despite complaints from customers, and numerous instances of the public being locked and trapped inside the Class Vehicles, upon information and belief, Defendant has not taken action to prevent or rectify this material safety defects.

5.    Plaintiffs Robert L. Hyde ("Hyde" or "Plaintiff") and the Class (as defined below) suffered an economic injury as a result of the Defects and Defendant's concealments about the safety of the Class Vehicles at the time of purchase.

6.    Accordingly, Plaintiff brings this action on behalf of himself, and other similarly situated individuals against Defendant regarding the Defect.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) because: (a) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (b) the proposed Class consists of more than 100 Class Members; (c) minimal diversity exists; and (d) none of the exceptions under the subsection apply to this action.

8.     This Court has personal jurisdiction over Defendant because Defendant conducts business within this District; and Plaintiff was injured within this District, where the transaction occurred.

9.     Defendant has sufficient minimum contacts in and within this District and has intentionally availed itself of the markets within California through the sale and provision of its goods and services to render the exercise of jurisdiction by this Court reasonable.

10. Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred within this judicial District and Defendant conducts substantial business within this judicial District and Plaintiff resides within this District (in the County of San Diego).

## PARTIES

11.     Plaintiff is, and at all times mentioned herein was, a natural person, individual citizen and resident of the County of San Diego, State of California.

12.     Upon information and belief, Defendant is a Delaware corporation, with its principal place of business located in Austin, Texas. Plaintiffs are further informed and believe that Defendant conducts business throughout the State of California, including within the County of San Diego and is registered as a foreign corporation in California.

13.     Upon information and belief, Defendant owns and manufactures the Tesla Model S.

14.    Upon information and belief, Defendant designs, manufactures, and markets these Class Vehicles.

## FACTUAL ALLEGATIONS

### A. Background on the Tesla Model S

15.    The Tesla Model S was first introduced to the market for the 2012 model year.

16.    These vehicles are all electric and run on a series of high voltage batteries, which requires the vehicles to be periodically charged through a power outlet.

17.    The doors on the Model S are electrically actuated, flush-mounted *exterior* door handles that require electronic extension and latch actuation in order to permit opening from the outside.

18.    Due to the fact that the Tesla Model S is equipped with flush-mounted exterior door handles that remain retracted during normal operation and must be electrically extended outward before the door can be opened from the exterior, opening the door from the outside requires the proper functioning of the vehicle's low-voltage electrical system and electronic door latch mechanisms.

19.    In the event that the vehicle is involved in a collision, an event which is both foreseeable and commonplace, and/or in an event where there is an issue with the battery, there is often a loss of low-voltage electrical power and/or emergency system shutdown. As a result, the exterior door handles fail to extend or actuate, and the doors cannot be promptly opened from the outside by occupants, bystanders, or first responders during the critical rescue window

20.    Further, the *interior* door handles also require electronic extension and latch actuation in order to permit opening from the interior.

21.    The interior rear doors are operated by a push button, and while the front doors of the vehicle have readily accessible manual emergency releases for the doors, the rear doors of the vehicle do not have the same readily accessible and/or discernable manual emergency door releases.

22.    Tesla's rear door emergency manual release concept and location have been remarkably consistent for a long time over the years.

23.    Early Model S documentation (older manual 2012-2014) describes that if the car has no electrical power, you open the rear doors by folding back the carpet below the rear seats to expose a mechanical release cable, then pulling the cable toward the center.[1]

24.    The current Model S Owner's manual still describes the rear door "no power" procedure the same way: fold back the carpet below the rear seats to expose the mechanical release cable and pull it toward the center of the vehicle.[2]

25.    The current Model S Owner's manual still describes the rear door "no power" procedure the same way: fold back the carpet below the rear seats to expose the mechanical release cable and pull it toward the center of the vehicle.

26.    Further, Tesla interior manual door release mechanisms are designed in such a way that the rear emergency release is hidden and not reasonably discoverable or usable by an average occupant under emergency conditions, particularly given the forces, disorientation, and time constraints inherent in a serious motor vehicle collision.

27.    In such instances, opening the door from the inside requires the proper functioning of the vehicle's low-voltage electrical system and electronic door latch mechanisms.  In the event that the vehicle is involved in a collision where there is a loss of low-voltage electrical power and/or an emergency system shutdown, Tesla's "solution" is to require occupants to effectively locate and pull apart part of a small cut section in the carpeting beneath the rear seats, find and locate a cable within it, and pull it toward the center of the vehicle, none of which would be easily

---

[1] Tesla Model S Owner's Manual V5.9, Opening Interior Doors with No Power, pg. 7.
[2] Tesla Model S Owner's Manual 2021+, Software Version 2026.2.3, Opening a Rear Door with No Power, pg. 229.

discernable to any rear seat occupant and all while enduring the stress of being trapped in a potential dangerous vehicle or condition.

28.

**B. The Defect on the Class Vehicles Presents a Significant Safety Concern**

29.     The Class Vehicles suffer from Defects that presents a significant safety concern to drivers and passengers that is not properly disclosed at the time of purchase.

30.     The doors of the Class Vehicles are <u>intentionally</u> designed with flush-mounted *exterior* door handles that require electronic extension and latch actuation in order to permit opening from the outside, which unlike most cars will not be accessible in the event of a power failure.

31.     Furthermore, the rear manual emergency release mechanisms for the doors are designed in such a way that the rear emergency release is hidden and not reasonably discoverable or usable by an average occupant under emergency or power loss conditions.

32.     The Class Vehicles, as defined herein, each have hidden and not easily discernable emergency rear door manual releases and require each occupant to be intimately familiar with the manual release location in the rear of the vehicle. Thus, all Class Vehicles suffer from this same Defects.

33.     Defendant knows of the Defects and intentionally failed to provide a readily available non-electric way to open the vehicle doors in the event of a battery failure from the outside of the vehicle, and intentionally failed to provide a readily available and discernable manual door release in the rear of the vehicle, unlike other electric vehicle manufacturers.

34.     These Defects presents significant safety risks to both drivers and passengers of these Class Vehicles, including because passengers (especially children, the elderly and the disabled) can easily become locked in the car in the event of a power failure. Just recently, an owner of a Modely Y with similar defects as Model S

---

perished in a vehicle when he could not manually open the doors of his burning Tesla. According to a Detroit News article dated February 5, 2026, Samual Tremblett was trapped in his Model Y after a collision and contacted emergency services. He pleaded with the 911 operator "I can't get out, please help me" and "it's on fire. Help please, I'm going to die" according to the lawsuit he filed.[3] Unfortunately, the design decisions of Tesla render the car a potential death trap in serious emergency conditions

35. Defendant knew (or at the very least should have known) of the Defects in the Class Vehicles yet has failed to disclose the Defects to consumers or even properly inform consumers how to open the vehicle in the event of a battery failure. Defendant concealed and/or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiffs and Class Members, in Defendant's advertising, labeling or otherwise that the Class Vehicles were, and still are, defective and are worth less than they should be, if they were not defective. This is especially true in emergency conditions as previously herein described. Rather than address the Defects, Defendant has failed to provide any remedy to Class Members.

## C. Defendant Has Failed to Address the Defect

36. The conditions described herein substantially impair the use, safety, and value of the vehicle. Tesla and its representatives have repeatedly refused to repair the defective systems, in breach of the express warranty provided.

37. Tesla and its representatives are unable to repair the defects and have refused to replace the vehicle or refund to Hyde the money paid for the vehicle pursuant to Civil Code section 1793.2.

38. As a result, the consideration received by Hyde under the contract has failed in whole or material part through the fault of Tesla and its representatives at Tesla.

39. These tedious and multi-step processes is not only not feasible for the average

---

[3] https://www.detroitnews.com/story/business/autos/2026/02/05/trapped-tesla-drivers-911-call-its-on-fire-help-please/88526968007/

driver/owner of the vehicle, but it presents **significant safety concerns for drivers and passengers** (particularly, children, the elderly and disabled, and even pets) who run the risk of getting locked inside the vehicle.

40.    Even though there is a hidden cable underneath the rear seat carpet, if the passenger is unaware of it, unable or does not know how to pull that emergency manual release, there is no way to quickly enter the vehicle from the outside in the instance of a battery failure other than breaking the windows.

41.    Upon information and belief, Defendant knew (or at the very least should have known) of the Defects in the Class Vehicles yet has failed to disclose the Defects to consumers or even properly inform consumers how to open the vehicle in the event of a battery failure or emergency.

42.    Plaintiff further informed and believes that Defendant concealed and/or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiff and Class Members, in Defendant's advertising, labeling or otherwise that the Class Vehicles were, and still are, defective and are worth less than they should be, if they were not defective.

43.    Rather than address the Defects, Defendant has failed to provide any remedy to Class Members.

### D. Factual Allegations Pertaining to the Named Plaintiff

44.    On or about February 17, 2023, Plaintiff purchased a brand new 2023 Model S (ending in VIN Number 1469) from Tesla, Inc.

45.    Unbeknownst to Plaintiff at the time of the purchase of his vehicle, he suffered an economic injury due to the Defects (that was concealed at the time of purchase of his Model S).

46.    As would a typical consumer, Plaintiff reasonably believed upon purchase that his Model S would be fit for the ordinary purpose for which it was used, i.e., to be able to access the vehicle safely, even in the event of a battery failure, and for him and his passengers to be able to easily and readily discern manual ways and be able

---

to manually and safely exit the vehicle in the event of a power failure or emergency.

47.    However, what Plaintiff did not know at the time of purchase, was that his Model S contained the material Defects herein already described.

48.    The Defects on Plaintiff's Tesla Model S and the other Class Vehicles poses safety risks and other inconveniences as described above and otherwise impairs the utility and value of the vehicle.

49.    Consequently, if ordinary reasonable consumers had known of the Defects, they naturally would consider it an important and material fact in deciding whether to purchase or lease a Class Vehicle and/or how much to pay for it.

**Defendant's Misconduct Injured Plaintiffs and the Class**

50.    The Defects on Plaintiff's Model S and the other Class Vehicles poses safety risks and other inconveniences as described above and otherwise impairs the utility and value of the vehicle.

51.    Consequently, if ordinary reasonable consumers had known of the Defects, they naturally would consider it an important and material fact in deciding whether to purchase or lease a Class Vehicle and/or how much to pay for it.

52.    As a long-time automotive manufacturer, which has likely conducted numerous customer surveys and fielded thousands of complaints and warranty claims from consumers, Defendant was aware that ordinary reasonable consumers generally expect defect-free automobiles when they make a substantial investment to purchase or lease.

53.    Defendant could and should have informed Plaintiff and the Class of the Defects, rather than concealing it and/or failing to warn consumers about the risk associated with a battery failure, the ability to access the Class Vehicles from the exterior, and the requirements to escape the rear of the vehicle. Such information could have been conspicuously provided through advertising and marketing campaigns; on-vehicle labeling, stickers, and placards; brochures; pamphlets; dealership personnel and agents; the internet and social media outreach; and through

full and complete disclosure through recalls.

54.     Such information could easily have been made known to Plaintiff and the Class by Defendant before Plaintiff and the Class purchased their Class Vehicles, such as through their interactions with Defendant's dealership personnel and agents; all the various marketing and advertising Defendant undertake (including through television, internet, social media, sporting events, and other media); by looking at their vehicles, upon which Defendant could have affixed a warning about the Defects which Plaintiff would have necessarily seen by looking and sitting in the vehicle itself; and/or through the mail or email, as Defendant could have sent out—and indeed, regularly do send out—for the many recalls Defendant routinely issues each year.

55.     Despite having knowledge of the Defects as detailed above—knowledge far superior to that of ordinary consumers such as Plaintiff and the Class—Defendant remained silent about the Defects for the Class Vehicles, and even worse, continues to sell the Class Vehicles with these dangerous Defects, when Defendant should have issued a recall.

56.     As a result, the public—including prospective purchasers and lessors like Plaintiff and the Class—were unaware of the Defects at the time they purchased their Class Vehicles.

57.     Indeed, Plaintiff and the Class bought Class Vehicles in reliance on the fact that the vehicles were fit for their ordinary purposes and did not contain a dangerous Defect.

58.     Defendant intended to mislead, and in fact misled, ordinary reasonable consumers—including Plaintiff and the Class—through its omissions, active concealment and/or failure to warn of the Defects.

59.     Defendant did so with the intent to generate and increase sales of the Class Vehicles, thereby increasing its share of the automobile market and avoiding the expense of modifying its vehicle design to eliminate the dangers as herein described.

60.    The Class Vehicles have a diminished value compared to the price they commanded when purchased or leased by Plaintiff and the Class because disclosure of the Defects would influence the purchasing and leasing decisions of ordinary reasonable consumers, including their valuation and willingness to pay for the Class Vehicles.

61.    If an individual is required to break a window to access the inside of the Class Vehicles or free a trapped passenger in the event of a power failure or emergency, costs for repair can cost thousands of dollars.

62.    Plaintiff and the Class lost money as a result of Defendant's conduct because they did not receive what they reasonably believed they were paying for due to Defendant's omission, active concealment, and/or failure to warn of the dangerous Defects, while Defendant realized a commensurate unearned gain because it did not deliver to Plaintiff and the Class what it reasonably expected to receive in exchange for the money it paid.

63.    As a result of Defendant's misconduct, Plaintiff and the Class suffered economic injury at the time of purchasing or leasing their Class Vehicles.

64.    Particularly, either they purchased or leased vehicles that they otherwise would not have, or they paid more to own or lease their Class Vehicles than they would have paid had the Defects been timely disclosed.

65.    Because the existence of the Defects in the Class Vehicles would have been patently material to a reasonable consumer, Plaintiff and the Class would not have purchased or leased the Class Vehicles and/or would not have paid as much for them were the Defects not concealed.

66.    Defendant's concealment caused Plaintiff and the Class to pay more for the Class Vehicles than they otherwise would have, or to purchase or lease the Class Vehicles when they otherwise would have chosen not to.

67.    Stated differently, absent Defendant's misconduct, Plaintiff and the Class would only have been willing to pay less for the Class Vehicles, if they were willing

to purchase or lease them at all.

68.    By concealing and not disclosing the Defects (which is dangerous to drivers and their passengers), Defendant distorted the true value of every Class Vehicle such that every Plaintiff and Class member received a vehicle of different and substantially lesser value—one with a higher effective cost—than they reasonably believed they were receiving.

69.    Indeed, Plaintiff and the Class surrendered more and acquired less in their transactions than they would have if Defendant had disclosed the Defect. Accordingly, Plaintiff and the Class did not realize the benefit of the bargain in purchasing and leasing the Class Vehicles, and their expectations as ordinary reasonable consumers were not met.

70.    In effect, Plaintiff and the Class paid substantially more than the market value represented by the price bargained for, as Plaintiff and the Class bargained on a particular market value for their respective Class Vehicles. Because the Defendant's misconduct resulted in Plaintiff receiving less than they bargained for, Plaintiff and the Class effectively paid a higher price than that reflected in the market price.

71.    The cost of every Class Vehicle would have been lower absent Defendant's concealment of the Defects and its related misconduct, and Plaintiff and the Class detrimentally altered their positions and suffered damages in an amount no less than the difference in value between what Plaintiff and the Class reasonably believed they were paying for and the value of the Class Vehicle they actually received.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A. The Statute of Limitations Did Not Begin to Run Because Class Members Did Not Discover and Could Not Discover Their Claims Based on the Defect

72.    Plaintiff and the Class had no knowledge of Defendant's misconduct, including the omissions and concealment alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein.

73.    Plaintiff and the Class did not discover, and could not discover, through the exercise of reasonable diligence, the fact that Defendant had manufactured and/or sold the Class Vehicles with the concealed Defects.

74.    The limited, though probative, disclosures and revelations alleged in this Complaint required extensive investigation by counsel who suspected, and then became aware of, the Defects.

75.    Ordinary consumers do not have detailed knowledge of vehicle systems and components, although they are justified in expecting their vehicles to be free of substantial safety defects like the Defects at issue in this action.

76.    Defendant maintains exclusive control over its proprietary design materials and other technical information that would have revealed the existence and nature of the Defects and the ways in which it manifests when operating a Class Vehicle. Plaintiff and the Class had no access to those materials or to any substitute that ordinary diligence would have revealed and, as a result, they could not reasonably have been expected to discover the Defects.

77.    No information in the public domain at the time of their purchases or leases by Plaintiff and the Class sufficed to reveal Defendant's misconduct earlier, including its omissions and concealment of the Defect, or the Defect itself.

78.    Accordingly, the statute of limitations did not begin to run because Plaintiffs and the Class did not discover and could not discover their claims, or, in the alternative, because fraudulent concealment tolled the statute of limitations.

79.    Defendant concealed the Defects and has continued to do so up through the date this action was filed. It did and does so to create the false impression in the minds of Plaintiff and the Class that the Class Vehicles were merchantable and that their component parts were able to perform their intended function safely and reliably.

80.    Plaintiff and the Class were justified in not bringing the claims earlier based on Defendant's failure to inform Plaintiff and the Class of the existence, nature,

extent, and scope of the Defects or its manifestations in Class Vehicles.

81.    For the foregoing reasons, the claims asserted in this action accrued much later than the time Plaintiff and the Class purchased and leased their Class Vehicles, and this action is timely.

### B. Fraudulent Concealment Tolled the Statute of Limitations.

82.    In the alternative, and based upon the same facts alleged above, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted here.

83.    Plaintiff and members of the Class were unaware of the Defects and Defendant's misconduct when they purchased or leased their Class Vehicles.

84.    Defendant's affirmative acts and omissions alleged herein were wrongfully concealed and carried out in a manner that precluded detection of both the acts and omissions themselves, and the existence, nature, extent, and scope of the Defects and its manifestations in Class Vehicles.

85.    By its very nature, Defendant's misconduct was inherently self-concealing. Vehicle systems and components are subject to regulations and other laws governing their safety and merchantability.

86.    Plaintiff and members of the Class reasonably expected the Class Vehicles, including their systems and components, to meet or exceeded such standards.

87.    Accordingly, a reasonable person under the circumstances would have no cause to investigate the legitimacy of Defendant's conduct before or after purchasing or leasing a Class Vehicle and would have faced extreme difficulty in discerning the Defects that they had no reason to suspect in the first place.

88.    Because the misconduct was both self-concealing and affirmatively concealed by Defendant, Plaintiff and members of the Class had no knowledge of the misconduct, or of any facts or information that would have caused a reasonably diligent person to investigate whether misconduct existed until counsel revealed the Defects to Plaintiff based upon extensive and also recent investigation.

89.    For these reasons, the statute of limitations as to Plaintiff's and the Class's claims did not begin to run and has been tolled with respect to the claims that Plaintiff allege in this Complaint and any others that might relate to it.

90.    Further, the statute of limitations was tolled as a result of Defendant's purposeful nondisclosure and other misconduct alleged herein, under the fraudulent concealment doctrine.

## CLASS ACTION ALLEGATIONS

91.    Plaintiffs seek to certify a California Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as:

> All persons within the State of California who (a) purchased and still own, and/or (b) lease or leased, at least one new Class Vehicle for the 2023 through 2026 model years.

92.    Excluded from the Class is Defendant and its board members, executive-level officers, attorneys, and immediate family members of any such persons; the Court, the Court's immediate family, and the Court staff; and any person who asserts a personal injury or wrongful death claim caused by the Defects.

93.    **Numerosity.** Upon information and belief, Defendant sold over 51,800 Class Vehicles throughout the United States from 2023 to the present.[4] Therefore, upon information and belief, the Class is comprised of a sufficiently large group of individuals—believed to be in the thousands, if not more—and thus is so large that it is impracticable to join all members of the Class before the Court as individual plaintiffs.

94.    **Typicality.** Plaintiff is a member of the Class in which he seeks to represent and bring claims typical of those Classes (which are typical of one another as well) because Plaintiff—like all other Class Members—purchased or leased a Class Vehicle designed, manufactured, marketed, distributed, sold, and/or leased by

---

[4] https://www.goodcarbadcar.net/tesla-model-s-sales-figures-usa-canada/

KAZEROUNI LAW GROUP, APC

Defendant.

95.    Plaintiff and each member of the Class received less than the full value of the Class Vehicles due to the Defects and Defendant's uniform omissions and concealment of the Defects. Class members, as ordinary reasonable consumers like Plaintiff, would not have purchased the Class Vehicles or paid as much to own or lease them had Defendant not concealed the Defects, which was unknown to Plaintiff and the Class alike.

96.    Thus, Plaintiff and the Class have all been damaged by Defendant's pattern of misconduct—which is common to all Class members—and have suffered the same economic harms. In other words, Defendant's misconduct is common to all Class Members and constitutes a shared factual nexus of injury to the Class.

97.    Plaintiff and the Class were exposed to the same or substantially similar material omissions regarding the electronic doors of the Class Vehicles; as ordinary consumers, all shared reasonable and foreseeable expectations regarding the safety and merchantability of the Class Vehicles; and all were harmed by the same omissions—namely, Defendant's concealment of the Defects.

98.    Plaintiff and each Class Member suffered economic damages that are calculable on a class-wide basis. The claims all arise from a single course of conduct and each Class member would therefore individually bring substantively identical legal and factual arguments to establish Defendant's liability for its misconduct.

99. There are no defenses available that are unique to the Plaintiff.

100.    **Commonality & Predominance.** The Class is united by a shared of interest in obtaining appropriate remedies, including injunctive relief, repair or replacement of the defective vehicles, restitution, damages, and other available relief designed to redress Defendant's wrongful conduct.

101.    This action involves questions of law and fact that are common to the Class that are susceptible to common answers and that predominate over any individual questions specific to any Class Member. These include, but are not

limited to the following:

    a. Whether the Class Vehicles contain the Defects;

    b. Whether the Defects constitutes a material fact to an ordinary reasonable consumer;

    c. Whether an ordinary reasonable consumer would have purchased or leased a Class Vehicle had the Defects been disclosed;

    d. Whether an ordinary reasonable consumer would have paid less money to purchase or lease a Class Vehicle had they known of the Defect—and if so, how much less they would have paid;

    e. Whether the Class Vehicles commanded a premium relative to their actual value in light of the undisclosed Defects;

    f. Whether and when Defendant had actual or constructive knowledge of the Defects;

    g. Whether Defendant had and has a duty to disclose the Defecst to the Class and whether it fraudulently concealed the Defects;

    h. Whether and to what extent Defendant is liable for damages, restitution, diminution in value, out-of-pocket expenses, and other losses incurred by the Class as a result of the Defects;

    i. Whether Defendant should be declared legally and financially responsible for notifying the Class of the Defects and of their right to whatever relief to which the Class is entitled; and

    j. Whether and to what extent other equitable or injunctive relief is appropriate to remedy the harms caused by Defendant's misconduct and to prevent further such harms.

102. These common issues will drive the resolution of the litigation in that their determination will resolve in one stroke issues that are central to the validity of each Class Member's claims.

103. The factual and legal issues identified above:

a. Remain common to the Class;

b. Arise from a common course of conduct and systemic policy decisions made by Defendant;

c. Predominate in number and importance over questions that may not be common to the class; and

d. Preclude neither class-wide calculation of damages nor the methodological determination of how such damages should be allocated among Class members.

104. **Adequacy of Representation.** Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members. Plaintiff commits to protecting the interests of the Class without exercising personal interest or otherwise acting in a manner inconsistent with the best interests of the Class generally.

105. Plaintiff has retained attorneys with exceptional experience in complex litigation, including extensive class action experience and experience in handling consumer protection cases and product liability cases, including automobile defect claims.

106. The firm and lead counsel for the firm retained by Plaintiff also has substantial trial experience, individually and collectively. Plaintiff and his attorneys will responsibly, ethically, and vigorously advocate on behalf of the Class, and Plaintiff's counsel have ample resources to do so.

107. **Superiority.** This class action is superior to the other means available to the Class to obtain relief because:

a. The damages suffered by individual Class Members are relatively small compared to the burden and expense of individual litigation of the claims described here against Defendant so that making the Class whole in the absence of a class action is unlikely and impracticable;

b. Class Members accordingly have relatively less interest in individually

controlling the prosecution of separate actions (if they even are aware of the issue); and it cannot be said that the interests of individuals pursuing individual cases in conducting separate lawsuits is so strong as to call for denial of a class action;

c. Denial of class treatment runs the risk of establishing incompatible standards of conduct for Defendant, discouraging the prosecution of meritorious but relatively small claims, and it may result in adjudications which would be dispositive of the interests of other Class Members who are not parties to the adjudication, or otherwise substantially impair the ability of Class Members (and Defendant) to protect their rights and interests;

108.     Defendant has no facially plausible interest in defending against separate, geographically dispersed claims and, in fact, that would be more burdensome to Defendant than defending against all potential claims in a single forum and proceeding.

109.     Likewise, the judicial system has no interest in burdening a number of courts when the claims of a cohesive class can be fairly and efficiently concentrated and managed by this Court.

110.     The claims are indeed manageable because they are governed by one state's law.

111.     Further, the class procedure is designed to result in the fair, uniform, and efficient adjudication of the sorts of claims presented by this Complaint.

112.     Defendant's misconduct impacts all Class Members, whose losses are capable of calculation on a Class-wide basis.

113.     **Injunctive and Declaratory Relief.** Defendant has acted or refused to act on grounds generally applicable to the Class, making the award of equitable relief and/or restitution appropriate to the Class in its entirety.

114.     Certification of particular issues would move the litigation forward

efficiently and would save money, time, and judicial resources for all involved, regardless of whether the action as a whole might be certified.

## FIRST CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act ("CLRA")

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (On Behalf of Plaintiff and the California Class)

115.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

116.    Plaintiff brings this cause of action against Defendant on behalf of themselves and the California for violation of the CLRA.

117.    Defendant is a "person" under California Civil Code § 1761(c).

118.    Plaintiff is a "person" under California Civil Code § 1761(c).

119.    Plaintiff and the Class are "consumers" under California Civil Code § 1761(d) because they purchased Class Vehicles primarily for personal, family, or household use.

120.    The purchase of Class Vehicles by Plaintiff and the Class, constitute "transactions" within the meaning of California Civil Code § 1761(e).

121.    The Class Vehicles are "goods" within the meaning of California Civil Code § 1761(a).

122.    Defendant's violations of the CLRA occurred repeatedly in Defendant's trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Class Vehicles.

123.    Defendant violated California Civil Code § 1770(a)(5) by representing that the Class Vehicles had a characteristic that they did not actually have—i.e., knowingly omitting the fact that Class Vehicles included Defects, making Class Vehicles, and their door systems, unfit for the ordinary purposes for which they were used.

124.    Defendant violated California Civil Code § 1770(a)(7) by representing

that the Class Vehicles were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard.

125. Defendant violated California Civil Code § 1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

126. Defendant had a duty to disclose the Defect because:

    a. The exclusive and reliable operation and functionality of the Class Vehicles' doors is central to the secure and reliable function of the Class Vehicles as a whole, including ensuring drivers and passengers can enter and exit the vehicles in the event of a power failure or emergency;

    b. Defendant was in a superior position to know that the Defects existed as the designers, manufacturers, assemblers, distributors, marketers, and warrantors of the Class Vehicles, and Defendant remains in that position as to the vast majority of unwitting Class Members;

    c. Plaintiff and the Class were not involved in the design or manufacture of the Class Vehicles, and as such could not be expected to learn or know about the existence and cause of the Defects;

    d. Defendant knew that Plaintiff and the Class lacked access to the design and manufacturing materials necessary to understand the existence and cause of the Defects; and,

    e. Defendant knew that ordinary reasonable consumers would expect the Class Vehicles to be free of significant defects central to the security and safety of the vehicles such that the Defects would constitute a material fact in any purchasing or leasing decision, i.e., it would have influenced any and every reasonable consumer's

purchasing or leasing decision, including whether and how much to pay to purchase or lease a vehicle.

127.    Ordinary reasonable consumers have no general appreciation of the components and subcomponents of vehicles and vehicle systems but would expect the vehicle to be well-designed and to offer a reasonable level of safety and reliability when used as intended.

128.    Every ordinary and objectively reasonable consumer would expect the Class Vehicles to be free of significant defects central to the safety of the vehicles and thus implicitly and necessarily would hold such an expectation as to the door system and its component parts.

129.    The reliable and proper functioning of the door system and vehicle door are a material component of a vehicle transaction.

130.    Accordingly, every ordinary and objectively reasonable consumer would have considered the Defects to be an important and material fact that would have substantially influenced their decision of whether to purchase or lease a Class Vehicle and how much to pay, if anything.

131.    Every ordinary and objectively reasonable consumer acting reasonably under the circumstances would have been deceived by Defendant's misconduct, including its concealment of the Defects.

132.    As a direct, foreseeable, and proximate result of Defendant's deceptive practices, Plaintiff and every member of the Class:

a. Purchased or leased a Class Vehicle they otherwise would not have purchased or leased or paid more than they otherwise would have;

b. Thereby suffered an ascertainable loss of money, property, and value of the Class Vehicles; and

c. Suffered actual damages and other economic harms because of the latent Defects, including the losses described elsewhere in this Complaint.

KAZEROUNI
LAW GROUP, APC

133.    Due to Defendant's original and continuing misconduct alleged throughout this Complaint, Plaintiff and the Class are entitled, pursuant to California Civil Code § 1780, to injunctive, declaratory, and equitable relief, including an order, judgment, and other judicial action, decision, or proclamation:

   a. Declaring that the Class Vehicles' door systems as defective;

   b. Declaring that Defendant's conduct violated the CLRA;

   c. Declaring that Plaintiff and the Class are entitled to reimbursement or restitution for money spent on the Class Vehicles; and

   d. Enjoining Defendant from continuing to violate the CLRA.

134.    On February 13, 2025, Plaintiff, through counsel, sent a notice of violations and demand for corrective action to Defendant pursuant to Cal. Civ. Code § 1782(a) (the "CLRA Demand"), via certified mail, return receipt requested.

135.    Plaintiff and the Class are entitled to, and seek, injunctive relief prohibiting such conduct in the future.

136.    Attached hereto as **Exhibits A** is the venue affidavit of Plaintiff pursuant to California Civil Code § 1780(d).

137.    Pursuant to California Civil Code § 1782(d), Plaintiff reserves the right to amend the Complaint to seek damages and attorneys' fees as to this cause of action should Defendant, within thirty (30) days of receiving the CLRA Demand, fail to provide Plaintiff with an appropriate correction, repair, replacement, or other remedy, and/or offer no relief or cure for the Class Members.

## SECOND CAUSE OF ACTION

### Violations of California's Unfair Competition Law ("UCL"),

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

### (On Behalf of Plaintiff and the California Class)

138.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

139.    Plaintiff brings this cause of action against Defendant on behalf of

themselves and the California Class for violation of the UCL.

140.    The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice.

141.    The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—only that such practices occurred.

142.    Defendant's acts, omissions, practices, and non-disclosures alleged throughout this Complaint constitute business acts and practices.

143.    Defendant's acts, omissions, practices and non-disclosures alleged throughout this Complaint constitute unlawful, unfair, and fraudulent business acts and practices because it has the capacity to deceive reasonable consumers, including Plaintiff and the Class, as to the benefits and effectiveness of the Class Vehicles and, thereby, the Class Vehicles' doors.

144.    Defendant had a duty to disclose the Defects based on its superior knowledge as the designers, manufacturers, sellers, marketers, and/or warrantors of the Class Vehicles, and as further alleged in this Complaint.

145.    Defendant violated Cal. Bus. & Prof. Code § 17200 by engaging in "unfair competition," including through "unlawful, unfair, or fraudulent business acts or practices" and "unfair, deceptive, untrue, or misleading advertising." Defendant's violations include:

  a. Advertising, marketing, distributing, selling, and leasing the Class Vehicles when Defendant knew those vehicles were defective and unable to reliably and safely perform their intended use;

  b. Failing to disclose the true nature, scope, and extent of the Defects; and,

  c. Concealing material facts regarding the Class Vehicles—i.e., the vehicle was designed with electrically actuated, flush-mounted *exterior* door handles that require electronic extension and latch

KAZEROUNI
LAW GROUP, APC

actuation in order to permit opening from the outside; and, the *interior* door handles also require electronic extension and latch actuation in order to permit opening from the interior and when there is a lack of power, a hidden and not clearly discernable manual emergency door release cable is hidden underneath the carpeting beneath the rear seats that needs to be accessed to open the rear doors.

146.     **Unlawful Prong:** Defendant's misconduct is "unlawful" under the UCL because it violates:

    a. Common law prohibition against fraudulent concealment;

    b. The CLRA;

    c. The Song-Beverly Consumer Warranty Act ("SBCWA"); and,

    d. The Transportation Recall Enhancement, Accountability, and Documentation Act (the "TREAD Act"), 49 U.S.C. 30101, *et seq.*, by failing to timely inform NHTSA of the nature, extent, and scope of the Defects and by allowing the Class Vehicles to continue to be sold, leased, and used in a dangerous and defective condition.

147.     **Unfair Prong**: Defendant's acts and omissions constitute "unfair" business practices under the UCL because:

    a. Defendant engaged in a misleading and deceptive practice of knowingly or intentionally selling the Class Vehicles, all of which have the Defects;

    b. Defendant's acts and omissions offend an established public policy of transparency in the sale or lease of consumer vehicles, and it engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers; and

    c. The harm to Plaintiff and the Class grossly outweighs the utility of Defendant's practices.

148.  **Fraudulent Prong:** Defendant's deceptive practices constitute fraudulent business acts or practices because Defendant deceived Plaintiff and the Class into purchasing a Class Vehicle that, unbeknownst to Plaintiff and the Class, were dangerously defective and unsuitable for their intended purpose.

149.  Defendant has engaged in deceptive, misleading, unfair, unconscionable, and fraudulent acts and practices that have caused actual damages to Plaintiff and the members of the Class, as described herein, and as noted below:

a. ***Who:*** Defendant (i.e., the designer, manufacturer, and marketer of the Class Vehicles).

b. ***What:*** Plaintiff and the Class purchased a Class Vehicle containing a Defect.

c. ***Where:*** Through Tesla and its authorized store fronts.

d. ***How:*** Defendant failed to disclose to Plaintiff and the Class at the time of purchase of the Class Vehicles that: (1) the Defects present a significant safety risk to drivers and passengers; (2) there is no easily available manual way to open the doors to the Class Vehicles in case of an emergency or power / battery failure from the outside or inside of the vehicle; and (3) there is no easily discernable manual way open the doors to the Class Vehicles in case of an emergency or power / battery failure from the rear of the vehicle.

150.  Defendant's concealment of the Defects and its false, deceptive, misleading, and confusing omissions would be material to any ordinary, average, and objectively reasonable consumer's decision whether to buy or lease a Class Vehicle, given that the Defect is central to the vehicles' functionality and the ability to access the vehicles, and it pertains to the safety of the Class Vehicles.

151.  No reasonable consumer, including Plaintiff, would have purchased or leased a Class Vehicle for the price they did but for Defendant's acts, practices, omissions, and active concealment of the Defect.

152.    Any ordinary, average, objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Defendant's acts and practices, including the omissions described herein.

153.    As a direct, foreseeable, and proximate result of Defendant's deceptive practices, Plaintiff and every member of the Class:

a. Purchased or leased a vehicle they otherwise would not have purchased or leased or paid more than they otherwise would have;

b. Thereby suffered an ascertainable loss of money, property, and value of the Class Vehicles; and

c. Suffered actual damages and other economic harms because of the latent Defect, including the losses described in this Complaint.

154.    Due to Defendant's original and continuing misconduct alleged throughout this Complaint, Plaintiff and the Class are entitled to injunctive, declaratory, and equitable relief, including an order, judgment, and other judicial action, decision, or proclamation:

a. Declaring that the Class Vehicles are defective;

b. Declaring that Defendant's conduct violated the UCL;

c. Declaring that Plaintiff and the California Class are entitled to reimbursement or restitution for money spent on the Class Vehicles; and

d. Enjoining Defendant from continuing to violate the UCL and, in accordance with Bus. & Prof. Code § 17203, enjoining Defendant to commence a corrective advertising campaign.

155.    Accordingly, Plaintiff and the Class demand all available relief including attorney's fees and costs; all available equitable, restitution, and injunctive relief; and other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

156.    Plaintiff alleges, in the alternative to their other causes of action, that

they lack an adequate remedy at law because monetary damages alone fail to make the Class Vehicles safe for continued operation.

157.    To do so, Plaintiff requires that the Defects be cured—and the cost of doing so, including parts and labor, potentially exceeds the amount of monetary damages suffered as a result of the diminution in value.

## THIRD CAUSE OF ACTION

### Violations of the Song-Beverly Consumer Warranty Act ("SBCWA")

### (Breach of Implied Warranty; Cal. Civ. Code §§ 1790, *et seq.*)

### (On Behalf of Plaintiff and the California Class)

158.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

159.    Plaintiff brings this cause of action against Defendant on behalf of themselves and the California Class for Violations of the SBCWA.

160.    California Civil Code § 1792 provides that, unless properly disclaimed, every sale of consumer goods is accompanied by an implied warranty of merchantability. Defendant did not at any time properly disclaim the warranty.

161.    The Class Vehicles are "consumer goods" as defined in California Civil Code § 1791(a).

162.    Plaintiff and the Class are "buyers" as defined in California Civil Code § 1791(b).

163.    Defendant is the "manufacturer" of the Class Vehicles under California Civil Code § 1791(j).

164.    Defendant impliedly warranted that the Class Vehicles, and particularly their electric door systems, were fit for the ordinary purposes for which they were used and without defect.

165.    This warranty formed the basis of the bargain with regard to the Class members' purchase and lease of Class Vehicles.

166.    Defendant knew, or at least should have known, that consumers

KAZEROUNI
LAW GROUP, APC

expected the Class Vehicles to be secure and free from any defects, and as such, impliedly warranted to Plaintiff and the Class that the Class Vehicles were "merchantable" under California Civil Code §§ 1791.1(a) and 1792.

167.    The Class Vehicles were and are not merchantable, and as such, Defendant breached its implied warranty, because:

    a. The Class Vehicles do not have the quality that a buyer would reasonably expect due to the Defects;

    b. The Defects renders the Class Vehicles susceptible to the purchase of after-market power sources, lock outs, or even passengers getting trapped inside the vehicle;

    c. The Class Vehicles have a latent Defects that poses an unreasonable risk of manifesting and that in fact manifest in ways that pose a constant risk to safety and compromise reliability;

    d. Defendant concealed the existence of the Defects; and

    e. Defendant has refused and failed to provide the needed repairs and replacements to address and correct the Defects.

168.    Plaintiff and the Class received the Class Vehicles in a condition that substantially diminishes their value, and which compromises the Class Vehicles' safety. As a result, Plaintiff is entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their vehicles.

169.    Defendant's breach of warranties proximately caused Plaintiff and the Class, collectively, to suffer damages.

170.    Accordingly, Plaintiff, individually and on behalf of the Class seeks all available monetary damages (including compensatory and/or liquidated damages and punitive damages); attorney's fees and costs; all available equitable, restitution, and injunctive relief; and all other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

## FOURTH CAUSE OF ACTION

### Common Law Fraudulent Concealment

### (On Behalf of Plaintiff and the California Class)

171. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

172. Plaintiff brings this count against Defendant on behalf of themselves and the California Class for fraudulent concealment based on the particular misconduct alleged throughout this Complaint and elaborated upon below.

173. **Duty.** Defendant had and continues to have a duty to disclose the existence, nature, and extent of the Defects because:

    a. The safe and reliable operation and functionality of the Class Vehicles, including the electronic door system, is imperative to keeping drivers and passengers safe;

    b. Defendant was in a superior position to know that the Defects existed as the designer, manufacturer, assembler, distributor, marketer, and warrantor of the Class Vehicles and Defendant remains in that position as to the vast majority of unwitting Class Members;

    c. As Defendant knew, Plaintiff and the Class lacked access to Defendant's proprietary and other non-public information, while information in the public domain was insufficient to alert a reasonably diligent consumer to the existence of the Defects, thus preventing Plaintiffs and the Class from knowing about the existence of the Defects or its manifestations during operation of the Class Vehicles;

    d. Plaintiff and the Class were not involved in the design or manufacture of the Class Vehicles, and as such could not be expected to learn or know about the existence and cause of the Defects;

    e. Defendant knew that Plaintiff and the Class lacked access to the design and manufacturing materials necessary to understand the existence and

cause of the Defects; and,

f.  Defendant knew that ordinary reasonable consumers would expect the Class Vehicles to be free of significant defects central to the function and safety of the vehicles such that the Defects would constitute a material fact in any purchasing or leasing decision, i.e., it would have influenced any and every reasonable consumer's purchasing or leasing decision, including whether and how much to pay to purchase or lease a vehicle.

174.    **Concealment.** Defendant concealed the Defects by:

a.  Knowingly selling and profiting from vehicles with the Defects while remaining silent as to Defects with the intent and purpose of ensuring that prospective customers would remain unaware of the Defect and would purchase or lease the Class Vehicles without consideration of how the Defects affected the value of the Class Vehicles;

b.  Purposefully withholding the existence of the Defects from dealerships, retailers, service facilities, and other businesses that sell, inspect, service, and maintain vehicles so that the public would remain ignorant of the Defects and continue to purchase the Class Vehicles;

c.  Failing to recall the Class Vehicles or to otherwise alert the public to the existence, nature, and extent of the Defects; and

d.  Failing to disclose the cause of various manifestations of the Defects when consumers experienced such problems, as alleged above.

175.    **Causation.**    Defendant's    deceptive,    misleading,    unfair, unconscionable, and fraudulent acts and practices have directly and foreseeably caused damages to Plaintiff and the Class, as alleged in this Complaint. In particular:

a.  Defendant's intentional concealment of the Defect and Defendant's false, deceptive, misleading, and confusing representations and omissions would influence any ordinary, average, and reasonable

consumer's decision whether to buy or purchase a Class Vehicle, given that the Defects pertains to the safety and security of the Class Vehicles. No reasonable consumer, including Plaintiffs, would have purchased or leased a Class Vehicle but for Defendant's acts, practices, omissions, and active concealment of the Defects, as described throughout this Complaint;

b. Any ordinary and objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Defendant's acts and practices, including its concealment of the Defects; and

c. As a direct, foreseeable, and proximate result of Defendant's deceptive practices, Plaintiff and the Class have sustained economic injury at the time of purchase or lease as well as other economic losses alleged above.

176. Accordingly, Plaintiff and the Class demand all available relief including all available compensatory and/or liquidated damages in an amount no less than the difference in value between what Plaintiff and the Class reasonably believed they were paying for and the value of the vehicle they actually received; attorney's fees and costs; all available equitable, restitution, and injunctive relief; and other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

177. Additionally, Defendant's intentional acts of deceit were carried out deliberately, maliciously, and wantonly, knowing full well—and therefore intending—that its deceit would cause economic harm to Plaintiff and the Class for its own aggrandizement. Defendant knew that its misconduct, including its concealment of the Defects, posing a safety risk to Plaintiffs and the Class; but it carried out its fraudulent scheme because doing so not only saved it money, but increased its profits and its market share. Defendant's reprehensible conduct thus warrants the imposition of punitive damages to punish it and to deter it and others

from engaging in the same or similar schemes in the future.

## Fifth CAUSE OF ACTION

### Common Law Unjust Enrichment

### (On Behalf of Plaintiff and the California Class)

178.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

179.    Plaintiff pleads this unjust enrichment cause of action in the alternative to any contract-based claims.

180.    Plaintiff brings this claim individually and on behalf of the California Class.

181.    The elements of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another.

182.    Plaintiff and Class Members conferred non-gratuitous benefits upon Defendant by essentially paying more for Class Vehicles that were, upon information and belief, worth less than what was paid given the Defects.

183.    Plaintiff and Class Members allege that Defendant owe them money for the conduct alleged herein.

184.    An undue advantage was taken from Plaintiff's and Class Members' lack of knowledge of the deception, whereby money was extracted to which Defendant had no legal right. Defendant is therefore indebted to Plaintiffs and Class Members in a sum equal to the difference between what Plaintiffs and Class Members paid for their Class Vehicles and what the Class Vehicles were actually worth.

185.    Defendant is therefore indebted to Plaintiff and Class Members in a sum certain for money had and received by Defendant, which Defendant in equity and good conscience should not retain.

186.    Defendant is therefore liable to Plaintiff and Class Members in the amount unjustly enriched.

187.    Defendant's retention of any benefit collected directly and indirectly from Plaintiff and Class Members violates principles of justice, equity, and good conscience. As a result, Defendant has been and continues to be unjustly enriched.

188.    Plaintiff and Class Members are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to disgorge to Plaintiffs and Class Members the benefits it has unjustly obtained.

189.    Defendant accepted or retained such benefits with knowledge that the rights of Plaintiff and Class Members were being violated for financial gain. Defendant has been unjustly enriched in retaining the revenues and profits from Plaintiff and Class Members, which retention under these circumstances is unjust and inequitable.

190.    As a direct and proximate result of Defendant's unlawful practices and retention of the monies paid by Plaintiff and Class Members in excess of what was promised, Plaintiff and Class Members have all suffered concrete harm and injury, including, but not limited to monetary loss in connection with their payments made to Defendant.

191.    Defendant's retention of the non-gratuitous benefits on it by Plaintiff and Class Members would be unjust and inequitable.

192.    Plaintiff and Class Members are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant in a manner established by this Court.

193.    Plaintiff and Class Members request the Court enter an order awarding them restitution, rescission, and or/damages, and that they are entitled to recover their reasonable attorneys' fees.

194.    Plaintiff and Class Members therefore also seek pre-and-post judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Civ. Proc. Code § 1021.5, any common law

"private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

### **PRAYER FOR RELIEF**

Plaintiff prays that judgment be entered against Defendant as follows, seeking equitable relief in the alternative to legal relief:

a.   That this action be certified as a class action;

b.   That Plaintiff be appointed as the representative of the Class, as applicable;

c.   That Plaintiff's attorneys listed below be appointed Class Counsel;

d.   For an order declaring Defendant's conduct to be unlawful;

e.   For an order compelling Defendant to make restitution to Plaintiff and the Class in an amount to be proven at trial;

f.   For actual, compensatory, statutory and/or liquidated damages;

g.   For pre- and post-judgment interest at the legal rate;

h.   For injunctive and other equitable relief as alleged herein and as necessary to protect the interests of Plaintiff and members of the Class, and to prohibit Defendant from engaging in the unlawful, unfair, deceptive and fraudulent acts described above, including public injunctive relief pursuant to Cal. Bus. & Prof. Code § 17204;

i.   For an order that Defendant engage in a corrective advertising campaign;

j.   For an order of restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the members of the Class as a result of its unlawful, unfair, and fraudulent business practices;

k.   For injunctive relief pursuant to California Code of Civil Procedure § 1780;

l.  For costs of this action and out-of-pocket expenses;

m.  For attorneys' fees, pursuant to, *inter alia*, Cal. Civ. Code § 1794(d); the common fund doctrine and/or Cal. Civ. Proc. Code § 1021.5; and

n.  For such other and further relief that the Court deems available and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demands a trial jury of all issues triable by right.

Dated: February 13, 2026                    Respectfully submitted,


**KAZEROUNI LAW GROUP, APC**



By: */s/ Mike Kazerouni, Esq.*
    Abbas Kazerounian, Esq.
    Mike Kazerouni, Esq.
    Pamela E. Prescott, Esq.
    *Attorneys for Plaintiff*